# UNITED STATES DISTRICT COURT

for the

District of Maine

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

EDA Staffing Inc., 371 Forest Ave, Ste 2, Portland
Maine; See Attachment A

Case No. 2: 12-Mj-152-JHR

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
EDA Staffing Inc., 371 Forest Ave, Ste 2, Portland Maine; See Attachment A of the Affidavit of Special Agent David Pawson

located in the _____ District of _____ Maine _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B of the Affidavit of Special Agent David Pawson

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 371 | Conspiracy; |
| 42 USC 408(a)(6) | Misrepresentation of Social Security Numbers |
| 8 USC 1324a(a)(10(A) | Employing unauthorized aliens |

The application is based on these facts:
See Affidavit of Special Agent David Pawson

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent David Pawson
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 08/30/2012 _____

_____
*Judge's signature*

City and state: Portland, Maine

John H. Rich III, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, David J. Pawson, having been duly sworn, do hereby depose and state as follows:

1.  I am a Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), and have been so employed with HSI since July of 2009. I am a graduate of the Criminal Investigator Training Program (CITP), the ICE Special Agent Training Program (ICESAT), and the U.S. Border Patrol Academy given at the Federal Law Enforcement Training Center (FLETC). I was employed previously as a Border Patrol Agent since August of 2005. My responsibilities with HSI encompass a wide variety of both administrative and criminal investigative matters within the jurisdiction of HSI to include the detection, investigation and apprehension of aliens who are in the United States unlawfully. Included in these duties are my responsibilities to investigate cases involving persons who have illegally obtained and/or used counterfeit and/or altered visas and immigration documents such as resident alien cards, employment authorization documents and passports to fraudulently obtain employment.

2.  I make this affidavit in support of a search warrant, pursuant to Rule 41 of the Federal Rules of Criminal Procedure, for the premises described as:

### PREMISES TO BE SEARCHED

a.  Employment on Demand Agency, Inc. (EDA Staffing), located at 371 Forest Avenue, Suite 2 in Portland, Maine 04101. EDA Staffing is a two-story, brick, red and green office building. The building is primarily brick with a large glass front and a wood siding adhered to the upper level. The entry is the center glass door which opens to stairs to the second level. The entrance

1

to suite two is the first and second wooded doors on the right (south) side of the hallway with the number two displayed.

3.     The items sought to be seized from the **Premises to be Searched** consist of the following items related to EDA Staffing:

### ITEMS TO BE SEIZED

a.  computers, computer software, computer hardware, computer discs, computer disc drives, computer monitors, computer printers, computer modems, tape drives, disc application programs, data discs, system discs operating systems, magnetic media floppy discs, zip drives, CD-ROMS, DVD-ROMS, hardware and software operating manuals, that are used for business purposes;[1]

b.  business records, including but not limited to, bills, receipts, credit card receipts, credit card statements, bank records, bank statements, checks, Ledgers, account statements, order forms, daily expense and revenue ledgers, invoices, purchase orders, and any other financial records;

c.  employee records, including but not limited to, payroll records, payroll stubs, payroll checks, withholding records and statements, worker compensation records and claims, identification checks, Employment eligibility Verification Forms (I-9s), work permits, federal and state required filings, employment agency referral slips, employment agency documents, and any other employee-related records;

---

[1]      *See infra* paragraph 29 for discussion of plan to, where feasible, copy data rather than physically seize computers.

      d.  immigration and identification documents, including but not limited to, passports, visas, alien registration cards, drivers licenses, Social Security Documents, credit cards, and any other records or copies of records pertaining to the identification and status of employees and;

      e.  rental slips, transportation receipts, expense account ledgers, and any other documents demonstrating a financial relationship between EDA Staffing and client companies.

4.     I have probable cause to believe that crimes have been committed, to wit:

- conspiracy to commit a violation of Title 18 United States Code, Section 1546(b)(3), use of false statement in immigration matter, in violation of Title 18 United States Code, Section 371;
- misrepresentation of social security numbers in violation of Title 42 United States Code, Section 408(a)(6),
- false statements with respect to employment practices in violation of Title 18 United States Code, Section 1001(c)(1);
- conspiracy to commit a violation of Title 8, United States Code, Section 1324a(a)(1)(A), employing unauthorized aliens in violation of Title 18 United States Code, Section 371;

and that the property to be seized is set forth in **"Items to be Seized" (¶ 3),** as contraband, evidence, and fruits of a crime. I further reasonably believe that there is probable cause that evidence of these violations will be found within the premises outlined **"Premises to be Searched" (¶ 2)** for reasons laid out in this Affidavit.

5.     As a Special Agent with HSI, I have conducted and/or participated in numerous federal criminal investigations to include work site and employment fraud investigations. The information contained in this affidavit results from among other sources, my training, experience, my personal knowledge and observations during the course of this investigation.

The information below is set forth solely for the limited purposes of this application and is not exhaustive.

## STATEMENT OF PROBABLE CAUSE

### EDA STAFFING, INC.

6.    Employment on Demand Agency, Inc. (EDA Staffing) is an employment agency located at 371 Forest Avenue in Portland, Maine. EDA Staffing acts as an intermediary for its clients, hiring individuals and placing them into companies throughout Maine. EDA Staffing's major clients include Curran Company, a vegetable processing company located at 86 Industrial Park Road in Saco, Maine, Shucks Maine Lobster, a lobster processing facility located at 150 Main Street in Richmond, Maine, Douty Brothers Inc. a fish and seafood processing facility located at 10 Portland Fish Pier in Portland, Maine, and the Portland Shellfish Company, a shellfish processing facility located 110 Darmouth Street in South Portland, Maine. It has numerous other clients as well. At any given time, EDA Staffing has 200-220 employees placed in various establishments. Generally, 1-2 office employees work at 371 Forest Avenue.

### XAVIER MORALES

7.    In March of 2011, I interviewed Xavier Morales who admitted he was involved in the unlawful entry and transportation of illegal aliens into the United States, some of whom thereafter obtained employment EDA Staffing. Morales had contacted law enforcement and stated he was being threatened by Gloria Moran and other individuals. As part of that and other conversations, Morales told me the following: In approximately 2009, he attended at least one meeting with Gloria Mora, then a worker for EDA Staffing, and EDA Staffing manager Rodrigo Schumacker. Moran does not currently hold a position with EDA Staffing although she has worked there in the past. This meeting took place at EDA Staffing's office. Moran paid him to

4

assist her by helping her to smuggle aliens who had illegally crossed the border into the United States in/or near Laredo, Texas to Maine. Moran arranged employment for illegally present aliens at various companies in Maine in cooperation with EDA Staffing through Schumacker. Morales also transported EDA Staffing employees she knew to be illegally present in the United States to Shuck's Seafood in Richmond, Maine and to other agricultural companies in northern Maine which are under contract with EDA Staffing for temporary labor in order for these employees to work.

### JOSE SANTOS MELENDEZ-LOPEZ

8.     In March of 2011, I interviewed Jose Santos Melendez-Lopez. Melendez-Lopez is an illegally present alien twice ordered removed from the United States by an Immigration Judge. Melendez-Lopez is cooperating with the United States under an agreement that his deportation be deferred while such cooperation is pending. Melendez-Lopez told me the following: He obtained employment at the Curran Company in Saco, Maine through EDA Staffing by presenting fraudulently obtained identity documents. In May or June of 2010, Melendez-Lopez met with Danny Rojas at the EDA Staffing office in Portland, Maine and applied for employment. Danny Rojas is an office worker at EDA Staffing tasked with hiring the workers who are sent to client companies throughout Maine. Rojas told Melendez-Lopez that he would need "papers" (a term I know in this context to be slang for identification documents proving employment eligibility). At that time, Melendez-Lopez presented a fraudulent Lawful Permanent Resident card (I-551) in the name of Santos-Reinaldo Munos, Alien Registration Number (ARN) XXX XXX 745, and a Social Security card in the name of Reinaldo Munos Santos, Social Security Number (SSN) XXX-XX-4861, to Rojas. The Lawful Permanent Resident card did not have Melendez-Lopez's photo displayed. Rojas pointed out to Melendez-

Lopez that Rojas knew the presented documents did not belong to Melendez-Lopez as a man with this name had already been employed at EDA Staffing and that man was not Melendez-Lopez. Rojas stated "funny you don't look like him," referring to the true Munos Santos. Melendez-Lopez admitted to Rojas that the documents did not belong to him and expressed his need to earn money. Rojas permitted Melendez-Lopez to work until Melendez-Lopez obtained new documents that displayed Melendez-Lopez's photograph. Melendez-Lopez worked for approximately four weeks without receiving a paycheck until he presented a new set of fraudulent documents to Rojas. At that time, Rojas gave four paychecks to Melendez-Lopez for work performed under the false name. Melendez-Lopez continued to work through EDA Staffing under this false identity until March of 2011, when he was arrested by HSI. According to Melendez-Lopez at the time of his arrest, he stated approximately half of the employees working with him at Curran Company, who also obtained employment through EDA Staffing, were unlawfully present in the United States.

10. Later, I showed Melendez-Lopez employment authorization documents that I discovered at EDA Staffing, discussed further in paragraph 18. According to Melendez-Lopez, the employment eligibility documents were completed for him at the time of his application by Rojas after Melendez-Rojas returned with a new set of fraudulent documents bearing Melendez-Lopez's photograph. Melendez-Lopez signed the documents as directed in the name of Munos-Santos. These documents are further described below in paragraph 18.

## IXTURVIDES CASTILLO-CEDENO

11. On August 8, 2011, I interviewed Iturvides Castillo-Cedeno, a former employee of EDA Staffing. Castillo had been previously administratively arrested by ICE Enforcement and Removal Operations (ERO) for his unlawful presence in the United States on March 21, 2011.

6

Castillo is cooperating with the United States under an agreement that his deportation be deferred while such cooperation is pending. At the time of his arrest, Castillo was transporting his unlawfully present wife and five other undocumented aliens who were all employed through EDA Staffing to the Bodega Latina, a central location and meeting place for EDA workers and those who transport them.  Castillo and his passengers had just ended their shift at the Curran Company when the vehicle Castillo was driving was stopped by the Maine State Police for speeding on the Maine Turnpike in Scarborough, Maine. Castillo presented an invalid International Driver's License to the Trooper, who in turn contacted ICE ERO.

12.	When I interviewed him, Castilo stated the following:  He had presented fraudulent identification documents to Rojas in order to obtain employment at EDA Staffing. The types of documents Castillo submitted included a fraudulent permanent resident card and fraudulent social security card.  The social security card presented displayed the number XXX-XX-0621, which is not assigned to Castillo.

13.	According to Castillo, Rojas told Castillo that he could work at Curran Company in Saco, Maine but Castillo would also need to transport other workers. For this duty, each worker paid Castillo an additional $5.00 per day per person. Castillo stated all the workers that he transported were unlawfully present in the United States as well as many of the workers at Curran Company. Castillo knew the workers he transported were undocumented based on conversations he had with them. As Castillo was himself unlawfully present, the workers were willing to speak of their status and experiences with Castillo. While Castillo was completing the application process, another male Hispanic Castillo believed to be also unlawfully present was simultaneously applying for a position with EDA Staffing. Castillo stated that Rojas became upset with the other man's aggressive behavior and addressed it by telling the man to put his

7

"fake papers" away. Castillo stated that Rojas completed the application and employment eligibility documents on behalf of Castillo and merely asked Castillo to sign the documents and provide copies of his fraudulent identity documents.

## SANDRA DOMINGUEZ

14.     On December 13, 2011, I interviewed Sandra Dominguez, a citizen of El Salvador. She told me the following: Dominguez was an employee of EDA Staffing and she lawfully obtained employment at EDA Staffing as a driver. She was paid $6.00 per day per employee that she transported to Curran Company plus $180.00 weekly, which Dominguez stated was paid to her by EDA Staffing. She would pick up a group of workers at approximately 4 a.m. outside the Bodega Latina located at the intersection of Weymouth and Congress Streets in Portland, Maine. Dominguez would then transport the workers to the Curran Company located on Industrial Park Road in Saco, Maine. Dominguez would return and pick up the workers at approximately 12:30 p.m. and return them to the Bodega Latina. On Wednesdays, Dominguez stopped at EDA Staffing in order for the passengers to pick up pay checks. Dominguez stated her sole responsibility at the time was to transport undocumented workers to and from their place of employment.

15.     Dominguez knew the workers she transported were unlawfully present in the United States. Dominguez stated she was aware of this because she occasionally directed many of her passengers, as well as others, to Individual A in order to purchase fraudulent identity documents.[2]

---

2 Since that time, I have worked with a confidential informant to purchase two sets of fraudulent identity documents from Individual A.

## AUGUST 10, 2011 SURVEILLANCE

16.    On August 10, 2011, I conducted surveillance of Curran Company and saw the following: Sandra Dominguez arrived and picked up three men in a white GMC Van, Maine license plate 1042 SA. Dominguez transported the men to EDA Staffing Company where the males entered the back door. August 10, 2011, was a Wednesday, the routine day for EDA Employees to receive their paychecks. I observed the males exited the business within a few minutes of being dropped off holding what I believed to be paychecks. Dominguez and the three males departed the area and drove to the intersection of Weymouth and Congress Street in Portland, Maine where the male subjects departed the vehicle and left on foot. Dominguez later confirmed the purpose of the trip was for the males to pick up their paychecks.

## ARREST AND INTERVIEW OF JOSE ROBERTO LANDAVERDE-GARCIA

17.    On August 9, 2012, I arrested Jose Roberto Landaverde-Garcia, a citizen and national of El Salvador because he was indicted for working under a fake social security number with EDA Staffing. Landaverde was present in the United States unlawfully and was not authorized to be employed. On August 23, 2012, I interviewed Landaverde and he told me the following: When he was hired in 2008, he presented fraudulent identification documents to EDA Staffing in order to obtain employment. EDA Staffing has a reputation within the undocumented alien community in Portland as a company that regularly hires undocumented aliens. He presented fraudulent identity documents to an employee at EDA named Jimmy LNU in support of his original application for employment, which was completed by Jimmy LNU on Landaverde' s behalf. Later, Rojas asked Landaverde to provide additional identity documents because Landaverde's documents had expired. Landaverde provided a second set of fraudulent

9

documents—which he assumes[3] contained different legal permanent resident and social security numbers than the first ones—to Rojas. According to Landaverde, Rojas completed the application and employment eligibility documents on Landaverde's behalf. Landaverde is aware that almost all of the workers at Curran Company supplied by EDA Staffing are undocumented aliens not authorized to be employed. Landaverde is aware of this because of conversations he has had with other workers, including the stories that are told by the workers relating to their entry and life in the United States specifically relating to encounters with law enforcement and their respective court appearances.

### HSI MEETING WITH EDA OFFICE EMPLOYEES

18.    In March of 2011, I met with Schumacker and Rojas at the EDA Staffing office in Portland, Maine. Following the arrest of Melendez-Lopez, without prior notification to EDA Staffing, I arrived at the office and requested copies of the employment eligibility documents for Melendez-Lopez. They could not find any records relating to Melendez-Lopez. However, Rojas and Schumacker identified a man named Reinaldo Munos as an individual they understood to have been arrested by HSI. Accordingly, I reviewed the documents related to Reinaldo Munos-Santos. I noticed, among other things, that the photograph on the documents related to Reinaldo Munos-Santos depicted the image of Melendez-Lopez. I requested Schumacker provide to me the employment authorization documents that EDA Staffing maintained for Melendez-Lopez in the name of Reinaldo Santos Munoz. Rojas opened one of two metal file cabinets under the far side of the desk which were filled with employment records. Rojas withdrew a folder from the drawer and presented to me an original Employment Eligibility Verification form I-9 displaying the name Reynaldo Santos Munos, an original Employee's Withholding Allowance Certificate W-4 in the name of Reynaldo Munos-Santos, a one page document displaying a copy of the front

---

3 Landaverde cannot read or write in any language.

side of a Lawful Permanent Resident Card in the name of Reinaldo Munos-Santos, ARN:XXX

XXX 745 and a Social Security Card in the name of Reinaldo Munos Santos displaying SSN:

XXX-XX-4861, and an original EDA Staffing document Rojas stated is the application for

employment. The application also displayed the name Reynaldo Munos Santos. I examined

these documents. I observed that the I-9 displays the hand printed name Munos, Reynaldo Santos

but the signature block is signed in the name Santos Reinaldo Munoz. The same error is

repeated on the W-4 and on the Social Security card. As discussed in paragraph 10 above,

Melendez-Lopez later stated that Rojas filled out this application forms for him and then told

him to sign the documents—which he did.

### ADMINISTRATIVE ARREST AND INTERVIEW OF ROJAS

19.     On April 26, 2012, I administratively arrested Danny Roja, a citizen of Peru,

based on evidence that he had overstayed his visa. After receiving his rights under Miranda,

Rojas told me the following. He unlawfully obtained employment at EDA Staffing in 2007 as a

laborer by using a fraudulently issued permanent resident card and social security card. Rojas

was later promoted and became authorized and responsible for hiring employees as well as

handling client relations. Rojas developed a personal relationship with Schumacker and Rojas

stated they became close friends. Throughout this relationship, Rojas and Schumacker became

aware of each other's immigration status. Rojas knew that, at least until November of 2010,

Schumcker, a citizen of Brazil, was undocumented. Although Schumacker was aware of Rojas'

ineligibility to be employed, Rojas was permitted to continue his employment. Rojas knowingly

hired aliens not authorized to be employed in the United States on behalf of EDA Staffing. This

activity was a normal part of everyday business and was conducted with the full knowledge of

EDA Staffing office manager Rodrigo Schumacker. Rojas was only directed to ensure the

photograph of identification matched the holder and the identification was not expired. Rojas stated he and Schumacker discussed my visit to the EDA offices in Portland, Maine in March 2011, as described above in Paragraph 11. He and Schumacker were concerned about HSI's investigation. Rojas suggested to Schumacker that EDA hire only lawfully present workers from then on and enroll in the E-Verify system. (E-Verify is an internet-based system operated by the Department of Homeland Security that allows businesses to determine the eligibility of their employees to work in the United States.) Rojas stated that he and Schumacker felt pressure from the client companies to hire only Hispanic workers. He stated that although they never explicitly stated they wanted only Hispanic workers, he felt this desire was implied as the client companies complained about workers of other ethnicities. Rojas also stated that he believed at that time, April 2012, approximately ninety percent of EDA Staffing employees are working under fraudulent identity documents and not authorized to be employed.

## DEPARTMENT OF LABOR AND SOCIAL SECURITY RECORDS

20.    In January of 2012, I received wage information from the Maine Department of Labor (DOL) for EDA Staffing for all quarters of 2009, 2010, and 2011. These records denote the name and social security number of each employee of EDA Staffing earning wages that are reported to the Maine DOL. Checks of HSI computer indices indicate that 45% of the social security numbers provided to the Maine DOL by EDA Staffing are being utilized by multiple people. Valid social security numbers are provided to one individual only. In my investigation of EDA Staffing and in my vast experience and training in this field, however, I know that many undocumented persons present in the United States illegally purchase fraudulent identification documents such as social security cards. In the majority of these cases, the Social Security Administration has assigned that social security number to another individual. As part of normal

business practices, social security numbers are often reported to credit agencies under an individual's specific name when that individual obtains a credit account, a telephone number, or as part of other routine practices. The individual's name is then associated with the social security number under which he/she used the number. The credit agency databases can be viewed in HSI computer indices, as well as other open source databases. Thus upon review of these indices as part of this investigation, I found that of the 221 names Maine DOL reported to be employees of EDA Staffing, approximately 45% were working under social security numbers being utilized or reported by more than one person.

21.     During my review of the wage earnings information, I discovered that Schumacker has been earning wages from EDA Staffing since March 31, 2009 through the fourth quarter of 2010 under social security number XXX-XX-1284. This number is in fact assigned to J. Z., a deceased female.  A representative of the Social Security Administration confirmed that social security number XXX-XX-1284 is not assigned to Schumacker.  In the first quarter of 2011, Schumacker began utilizing newly issued social security number XXX-XX-4017, which he obtained during a one year period of authorized employment as described in the following paragraph.

22.     On June 1, 2010, Schumacker filed an application for adjustment of status (Form I-485) which he signed under penalties of perjury and filed with the U.S. Citizenship and Immigration Services (CIS). In the application, Schumacker lists his start of employment with EDA Staffing as May 2007. The official notes attached to Schumacker's immigration file indicate he was not eligible to be employed until November 22, 2010, when he filed a petition to adjust his status based on his marriage to a United States Citizen. This eligibility, however, expired on November 21, 2011. Schumacker since regained eligibility to obtain employment

based on his marriage to a United States citizen. Also included on Schumacker's petition to adjust status (I-485) is social security number XXX-XX-1284 assigned to J.Z.

### RETENTION OF RECORDS

23.     Based upon my knowledge, experience and information provided to me by other law enforcement officers, I am aware that staffing agencies will maintain records including contractual agreements between the third party agency and the soliciting company, employment applications, Employment Eligibility Forms (I-9), Withholding Allowance Certificates (W-4), copies of identity documents such as a Social Security Cards, Permanent Resident Cards, Employment Authorization Documents, birth certificates or other documents directed in the I-9 instructions required to lawfully complete an I-9, contracts, logs, receipts, letters, memorandums, electronic mail, bookkeeping ledgers (written and electronic), employee records, records of salaries and payments to employees, returned checks, bank records, business contact information, and other documents pertaining to the normal business operations. Indeed, companies are required to keep I-9 forms and must keep them for at least three years from the date of hire or for one year past termination, whichever is later. Moreover, The IRS requires employers to maintain certain records for a specified period of time. Employers must keep all records of employment taxes paid for at least four years. With respect to tax returns or information statements that relate to an employee's personal income tax return, records must be retained for at least four years from the later of the due date of the tax to which the return relates or the due date of the employee's tax return.

## COMPUTERS

24.     As described above, this application seeks permission to search for records that might be found on the PREMISES, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

25.     I submit that if a computer or storage medium is found on the PREMISES, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

> a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

> b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

15

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

d. Based on my investigation, I am aware that computer equipment was used to generate, store, and print documents used in the scheme. There is reason to believe that there is a computer system currently located on the PREMISES.

26.     This application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any computer in the PREMISES because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media,

16

and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a computer or storage medium can also indicate who has used or controlled the computer or storage medium. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, e-mail, e-mail address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the computer or storage medium at a relevant time.

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of

17

knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

27. In many cases, a thorough search of premises for information that might be stored on storage media requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either on-site imaging or seizure for later imaging is necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is likely that it will be necessary to thoroughly examine storage media to obtain

18

evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

d. Based on the foregoing, and consistent with Rule 41(e)(2)(B), if persons executing the warrant conclude that it would be impractical to review the media on-site, the warrant I am applying for would permit seizing or imaging storage media that reasonably appear to contain some or all of the evidence described in the warrant, thus permitting its later examination consistent with the warrant. The examination may require

19

techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

e. EDA Staffing is a functioning company that may conduct legitimate business. The seizure of the company's computers may limit the company's ability to conduct any legitimate business. Reasonable execution of the search warrant will likely involve conducting an investigation on the scene of what computers, or storage media, must be seized or copied, and what computers or storage media need not be seized or copied. Where appropriate, officers will copy data, rather than physically seize computers, to reduce the extent of disruption. If employees of the Company so request, the agents will, to the extent practicable, attempt to provide the employees with copies of data that may be necessary or important to the continuing function of the Company's legitimate business. If, after inspecting the computers, it is determined that some or all of this equipment is no longer necessary to retrieve and preserve the evidence, the government will return it.

**REQUEST THAT THE SEARCH WARRANT MATERIALS BE SEALED**

28.     Because of the ongoing nature of this investigation, I respectfully request that the Application and Affidavit, the Warrants, any order filed as a result thereof, and any docket entries created thereby, be sealed except as required by law regarding service of the Warrants until a return is made on the Warrants.

20

## CONCLUSION

29.     Based on the aforementioned information, I believe there is probable cause to find that violations of 18 U.S.C. § 371 (conspiracy); 18 U.S.C. § 1546(b)(3) (false statement in an immigration matter); 18 U.S.C. § 408(a)(6) (misrepresentation of social security numbers); 18 U.S.C. § 1001(c)(1) (false statements in employment practices); and 8 U.S.C. § 1324a(a)(1)(A) (employing unauthorized aliens). Additionally, I believe that that the ITEMS TO BE SEARCHED FOR are fruits of criminal activity, and/or property designated or intended for use or which has been used as a means of committing these criminal offenses; and that these items specifically designated under ITEMS TO BE SEARCHED FOR can be found on the premises specifically designated under PREMISES TO BE SEARCHED.

I, David Pawson, hereby swear under oath that the information set forth in this Affidavit is true and correct to the best of my knowledge, information, and belief, and that I make this oath under pains and penalties of perjury.

Dated at Portland, Maine this 30th day of August, 2012.

David Pawson
Special Agent
U.S. Department of Homeland Security
Homeland Security Investigations

Sworn to and subscribed before me on this 30th day of August, 2012.

John H. Rich III
United States Magistrate Judge

21

## **ATTTACHMENT A**

### **PREMISES TO BE SEARCHED**

Employment on Demand Agency, Inc. (EDA Staffing), located at 371 Forest Avenue, Suite 2 in Portland, Maine 04101. EDA Staffing is a two-story, brick, red and green office building. The building is primarily brick with a large glass front and a wood siding adhered to the upper level. The entry is the center glass door which opens to stairs to the second level. The entrance to suite two is the first and second wooded doors on the right (south) side of the hallway with the number two displayed.

## ATTACHMENT B

### ITEMS TO BE SEIZED

a.  computers, computer software, computer hardware, computer discs, computer disc drives, computer monitors, computer printers, computer modems, tape drives, disc application programs, data discs, system discs operating systems, magnetic media floppy discs, zip drives, CD-ROMS, DVD-ROMS, hardware and software operating manuals, that are used for business purposes;

b.  business records, including but not limited to, bills, receipts, credit card receipts, credit card statements, bank records, bank statements, checks, Ledgers, account statements, order forms, daily expense and revenue ledgers, invoices, purchase orders, and any other financial records;

c.  employee records, including but not limited to, payroll records, payroll stubs, payroll checks, withholding records and statements, worker compensation records and claims, identification checks, Employment eligibility Verification Forms (I-9s), work permits, federal and state required filings, employment agency referral slips, employment agency documents, and any other employee-related records;

d.  immigration and identification documents, including but not limited to, passports, visas, alien registration cards, drivers licenses, Social Security Documents, credit cards, and any other records or copies of records pertaining to the identification and status of employees and;

23